UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON MATTHEW SPURGEON,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A BERRYHILL,<br>Commissioner of Social Security,<br><br>Defendant. | Case No. 5:17-cv-00043-KES<br><br>MEMORANDUM OPINION<br>AND ORDER |

Jason Matthew Spurgeon ("Plaintiff") appeals the final decision of the Commissioner denying his application for Social Security Supplemental Security Income ("SSI") benefits. See Administrative Record ("AR") 84-101 (decision of Administrative Law Judge or "ALJ"). For the reasons stated below, the Commissioner's decision is affirmed.

## I.

## BACKGROUND

On May 13 and 14, 2013, Plaintiff filed applications for SSI benefits alleging that he is disabled and unable to work due to scoliosis, a hip impairment, and a

1

spinal impairment. AR 213-18, 263.[1]  After benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an ALJ. AR 120-22. A hearing was held on May 19 2015, at which Plaintiff appeared and was represented by counsel. AR 7-26. The ALJ issued an unfavorable decision on July 10, 2015. AR 84-101.

The ALJ found that Plaintiff had severe impairments of "scoliosis status post fusion with Harrington rods and chronic back pain," but that he retained the residual functional capacity ("RFC") to perform light work with additional limitations: "[Plaintiff] is limited to lifting and carrying 20 pounds occasionally, 10 pounds frequently; sitting, standing, and walking for 6 hours each in an 8-hour day; and occasionally climbing, balancing, stooping, kneeling, crouching and crawling." AR 89-90. Based on the testimony of a vocational expert, the ALJ determined that Plaintiff was incapable of performing any of his past work but was capable of performing light, unskilled occupations such as ticket taker, checker I, and cashier II. AR 95.

Plaintiff sought review by the Appeals Council, which was denied on December 15, 2016. AR 1-6. On that date, the ALJ's decision became the final decision of the Commissioner. On October 30, 2017, the parties filed a joint stipulation ("JS") in this Court discussing the grounds on which Plaintiff challenges the Commissioner's decision. (Dkt. 22.)

## II.
## STANDARD OF REVIEW

**A.** **<u>Substantial Evidence and Harmless Error.</u>**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's

---

[1] In addition to an application under his own Social Security number, Plaintiff filed applications for child's insurance benefits under his parents' Social Security numbers. AR 219-232.

2

decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006).

**B.     The Evaluation of Disability.**

A person is "disabled" for purposes of receiving Social Security benefits if he is unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). A claimant for disability benefits bears the burden of producing evidence to demonstrate that he was

3

disabled within the relevant time period. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

**C.    The Five-Step Evaluation Process.**

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n. 5 (9th Cir. 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform his past work; if so, the claimant is not disabled and the claim must be denied. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n. 5; Drouin, 966 F.2d at 1257.

## III.
## ISSUES PRESENTED

Plaintiff's appeal presents the following issues:[2]

Issue One: Whether the ALJ erred in finding that Plaintiff's headaches are a non-severe impairment. (JS at 4-5 [Plaintiff's arguments]; id. at 7-10 [Commissioner's response].)

Issue Two: Whether the ALJ's RFC determination is supported by substantial evidence, because the ALJ relied solely on the opinions of non-treating, non-examining state agency medical consultants. (Id. at 5-7 [Plaintiff's arguments]; id. at 10-12 [Commissioner's response].)

Issue Three: Whether the ALJ properly considered Plaintiff's subjective complaints and properly assessed his credibility. (Id. at 12-18 [Plaintiff's arguments], id. at 18-23 [Commissioner's response].)

## IV.
## DISCUSSION

**A.     Overview of Plaintiff's Medical History.**

In 2008, at the age of 13, Plaintiff was diagnosed with adolescent idiopathic scoliosis with continuing curve progression. AR 365-66. In September 2009,

---

[2] Although Plaintiff states there are only two issues (see JS at 3-4), the Court has divided Plaintiff's arguments into three issues for purposes of this opinion, because Plaintiff's "Issue No. 1" includes two separate arguments.

5

Plaintiff underwent spinal fusion surgery with Harrington rod placement from the T4 to L2 vertebrae. AR 342-47. Following surgery, in January 2010, Plaintiff's doctor found that he was "doing well" with "no significant discomfort" and recommended that he "[r]eturn to activities as tolerated, except football and gymnastics." AR 354.

Two years later, in January 2012, Plaintiff sought treatment from family practice physician Dr. Jonathan Fish for back pain "in the right upper back" that was "moderate in severity and worsening." AR 380-81. Dr. Fish recommended a back brace and treatment with an orthopedic specialist. AR 381.

In February 2012, based on Dr. Fish's referral, Plaintiff began treatment at Northwest Orthopaedic Surgeons. AR 398-99. Plaintiff reported a sometimes "very sharp" pain "inside of his right shoulder blade." AR 398. However, he stated that "most of the time his back [did] not give him trouble" and he "just want[ed] to make sure that this back pain he [was] experiencing [was] nothing serious." AR 398. He reported that "after his surgery he never had any formal physical therapy" and that he had "not tried recent treatments." AR 398.

Plaintiff was examined by physician's assistant ("PA") Jessica Ross. AR 398. She observed that he was in no apparent distress and had a full range of motion in his lower extremities. Id. However, she noted that he was "lacking end range flexion of the lumbar spine," had "mild prominence of the right scapula with spinal flexion when compared with the left," and had tenderness "just to the right of the upper thoracic spine at the level of the scapula where his upper back is most prominent due to the rotary nature of his scoliosis." AR 399.

A physician named Dr. Mourning reviewed PA Ross's examination results and Plaintiff's x-rays. Id. As reported by PA Ross, Dr. Mourning opined:

> [H]e believes at this point [Plaintiff] would benefit from conservative treatment. He states if more of the rotation had been addressed in the surgery [Plaintiff] may have a little less prominence of the upper

>                 thoracic region of the back. This may be contributing to [Plaintiff's]
>                 pain. He states that based on my examination today and the films he
>                 thinks [Plaintiff] would do well with formal physical therapy. …
>                 Ultimately [Plaintiff] will need to work on back strengthening and core
>                 strengthening for the remainder of his life. If [Plaintiff] develops any
>                 other symptoms that are concerning we would have him follow up.
>                 Otherwise, we will follow a course of conservative treatment.

Id.

It appears that Plaintiff subsequently attended physical therapy for about two months. See AR 403 (in May 2013, Plaintiff reported that he was sent to physical therapy "over a year ago and did some sessions"); AR 422 (in October 2013, plaintiff reported that he had previously attended physical therapy for two months and this was "partially helpful but not adequate"). The administrative record does not contain any progress notes from this therapy.

In October 2012, Plaintiff sought treatment from Dr. Fish for chest pain and pressure that started when he was "lifting [a] chair" at work "at [a] Navy base." AR 391-92. Dr. Fish noted, "Not Present- Back Pain, Decreased Range of Motion, Joint Pain, Muscle Weakness and Swelling of Extremities" and "no associated … headache[.]" AR 391. Dr. Fish concluded the pain "could be musculoskeletal" and prescribed a painkiller, Ultram (Tramadol-Acetaminophen). AR 392.

About six months later, in April 2013, Plaintiff saw Dr. Herbert Stickle (another doctor in Dr. Fish's practice group) and reported that he "experience[d] scoliosis pain from time to time" that was not "constant" but rather "flare[d] for 45 minutes, then subside[d], etc." AR 393. Dr. Stickle continued Plaintiff on Ultram and added a prescription for Robaxin. AR 394. In May 2013, Dr. Fish increased Plaintiff's dosage of Robaxin and referred Plaintiff to an orthopedic specialist. AR 396-97, 411-12. At that time, Plaintiff reported he was "still active at work and [didn't] seem to be improving; right shoulder pain intermittently [sic]." AR 397.

In May 2013, Plaintiff returned to Northwest Orthopaedic Surgeons, over a year after his initial visit. AR 403. He was again examined by PA Ross. Id. Plaintiff reported that his back pain was "exacerbated by extensive standing, which he does for work" and that "he only work[s] sporadically due to the back pain. … When he works he does retail inventory." Id. He reported that Tramadol and Robaxin "do not work well," and that he was sent to physical therapy "over a year ago and did some sessions with limited improvement." Id. PA Ross observed that Plaintiff walked with a "normal reciprocal gait" and had "no tenderness to palpation." AR 405. She noted that he did have "elevation of the right shoulder blade which is pronounced with standing and leaning forward" and "tightness in his leg muscles." Id. After ordering and reviewing x-rays of Plaintiff's spine, PA Ross opined:

> [N]othing has changed on his films from our visit last year. There are no signs of hardware failure and we believe the pain is from the continued rotation of his upper spine. No surgery is recommended at this time, but I do think a repeat course of PT and then a continuous HEP [home exercise program] will be the most helpful for him. He states Robaxin does not work well, so I prescribed Flexeril instead…. He may need a referral to a pain management specialist if the PT is not helpful. I told him that he is not causing harm by working even though it increases his pain. He was also advised he needs to stretch out his muscles in his back and legs more frequently and these are contributing to his problems.

AR 406.

In September 2013, Plaintiff told Dr. Fish that he had given his two weeks' notice at work because "he works in inventory and has difficulty and pain with frequent bending involved in his work." AR 415. Upon examination, Dr. Fish observed Plaintiff had "[f]ull ROM [range of motion] but reported pain with

forward flexion and reported pain with twisting torso LT or RT." Id. Dr. Fish referred Plaintiff to a pain management specialist. Id.

Between October 2013 and August 2014, Plaintiff saw several different physicians at the Mt. Baker Pain Clinic, who prescribed varying types of pain medication with limited success. See AR 422-55. The doctors first prescribed non-opioid medications, apparently in part because Plaintiff expressed "some concerns in that he has a family history of addiction." AR 455 (December 2013 treatment note). Plaintiff generally reported that his average pain ranged between 7/10 and 9/10.

In August 2014, Plaintiff was seen by nurse practitioner Bridgett Bell Kraft, who examined Plaintiff and noted decreased range of motion with back flexion and lateral flexion. AR 431. She also discovered that Plaintiff had not been taking his medication as prescribed:

> [A]t this clinic he has received and failed nortriptyline, duloxetine, meloxicam, gabapentin, Tylenol #3, Vicodin, Butrans. Started on venlafaxine once daily with instructions to increase to BID [twice daily] schedule. He did not do this (family history of drug addiction; would rather not take any medication). Could not get the Butrans due to insurance. Last month, topirimate was added, with instructions to increase this also to BID dosing; he did not do that, either. Given oxycodone/apap, but has taken only two tablets this month.
>
> Discussed with him frankly that we are not interested in coercing him to do anything. "You are the expert of you, we are the experts of pain. We have to work together." Mentioned that there cannot be any change unless he is willing to try something. Asked him to increase the venlafaxine to BID to start. Will plan on his increasing topirimate next month. Told him he can use the oxy/apap if he's in pain; that we are trained to look for signs of addiction in our patients and will not let him

get into trouble. Won't know until next month if he can accept that.
AR 432.

It appears Plaintiff had no further treatment at the Mt. Baker Pain Clinic, which is in Washington state. He testified that in October 2014, he moved to California to live with his aunt and uncle. AR 19.

**B.    Issue One: Whether the ALJ Erred in Finding that Plaintiff's Headaches Are a Non-Severe Impairment.**

Plaintiff argues that the ALJ erred in finding that Plaintiff's headaches are a non-severe impairment because this finding is not supported by substantial evidence. (JS at 4.) Plaintiff also argues that "the record is essentially incomplete" because the ALJ "failed to attempt to quantify the severity or frequency of Plaintiff's headaches[.]" (Id. at 5.)

**1.    Legal Standard.**

Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter, 504 F.3d at 1035. It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins, 466 F.3d at 882). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720. "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

"An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a) (2015). The claimant bears the burden of producing evidence to support a finding of disability, including evidence that an impairment is severe. See 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a

10

disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). Social Security regulations explain:

> [Y]ou have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled. This duty is ongoing and requires you to disclose any additional related evidence about which you become aware. This duty applies at each level of the administrative review process, including the Appeals Council level if the evidence relates to the period on or before the date of the administrative law judge hearing decision. We will consider only impairment(s) you say you have or about which we receive evidence.

20 C.F.R. § 416.912(a) (2015).[3]

Nevertheless, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). This duty is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); see also Agadzhanyan v. Astrue, 357 F. App'x 148, 150 (9th Cir. 2009) ("The ALJ's independent duty to develop the record was not triggered, because he did not find any piece of evidence to be ambiguous or difficult to interpret."). When triggered, the ALJ "may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to

---

[3] The Court applies the version of the regulations in effect when the ALJ issued his decision on August 18, 2015. 1 AR 72. See Rose v. Berryhill, -- F. Supp. 3d --, 2017 WL 2562103, at n.3 (C.D. Cal. June 13, 2017).

11

allow supplementation of the record." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

   **2.   Analysis.**

The ALJ found that Plaintiff's headaches are a medically determinable impairment but not a severe one:

> The medical and other evidence establish that [Plaintiff's] medically determinable impairment of headache causes only a slight abnormality that would have no more than a minimal effect on his ability to work (20 CFR 404.1521 and 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). The treatment record shows a medical history of migraine and tension headaches (Exhibit 5F, p. 6) [AR 422-23]. [Plaintiff] testified he continues to experience headaches; however, he admitted that the frequency of his headaches has reduced since he began wearing prescription glasses. Furthermore, no aggressive treatment was recommended or anticipated for [Plaintiff's] headaches. Accordingly, the undersigned finds [Plaintiff's] medically determinable impairment of headache is a nonsevere impairment.

AR 90.

This finding is supported by substantial evidence. In the October 2013 medical record cited by the ALJ, one of Plaintiff's pain management doctors noted that Plaintiff complained of "headaches and weakness," and noted a history of migraine and tension headaches. AR 422-23. Other records show that Plaintiff reported a history of migraine and tension headaches, but do not show any current complaints about headaches. See AR 425, 453, 449, 445 (records noting Plaintiff was "negative for … headaches" in November 2013, December 2013, March 2014, April 2014, May 2014). The only testimony about headaches at the hearing before the ALJ was as follows:

> Q [by ALJ]: Are you taking any medications?

| | |
|---|---|
| 1 | A [by Plaintiff]: Yes, I take currently oxycodone, venlafaxine, and |
| 2 | topiramate [sic]. |
| 3 | Q What's the tomaripate [sic] for? |
| 4 | A I'm not 100% sure. It was just prescribed for me by one of the |
| 5 | visits in pain management on top of my stuff for probably nerve pain |
| 6 | and headaches at the time, and stuff like that. |
| 7 | Q Are you still getting headaches? |
| 8 | A Yes, but not as much. I recently, a few months ago started |
| 9 | wearing prescription glasses, so it's -- |
| 10 | Q Does that help? |
| 11 | A It's reduced it, but I still get -- like just last night I had a really |
| 12 | bad migraine, and it was very, very awful. |
| 13 | … |
| 14 | Q What's the highest pain level you ever have? |
| 15 | A  Maybe nine or more. Maybe nine or ten. |
| 16 | Q How often does that happen? |
| 17 | A Rarely. … It's really awful. It will be like a bad day, plus a |
| 18 | migraine, and I won't want to move at all. |
| 19 | AR 19-20, 23. |
| 20 | Plaintiff does not point to any other medical evidence in the record that the |
| 21 | ALJ should have considered. Instead, Plaintiff argues that the ALJ failed to |
| 22 | adequately develop the record because the ALJ "failed to attempt to quantify the |
| 23 | severity or frequency of Plaintiff's headaches…." (JS at 5.) The Court finds that |
| 24 | the ALJ's duty to affirmatively develop the record on this point was not triggered. |
| 25 | The record did not contain ambiguous evidence about Plaintiff's headaches, but |
| 26 | simply a lack of medical evidence supporting Plaintiff's assertion that his |
| 27 | headaches were a severe impairment. See Mayes, 276 F.3d at 459-60 (duty is |
| 28 | "triggered only when there is ambiguous evidence or when the record is |

inadequate"); Agadzhanyan, 357 F. App'x at 150 (duty was not triggered because the ALJ "did not find any piece of evidence ambiguous or difficult to interpret").

## C. Issue Two: Whether the ALJ's RFC Determination is Supported by Substantial Evidence, Because the ALJ Relied Solely on the Opinions of Non-Treating, Non-Examining State Agency Medical Consultants.

Plaintiff argues that the medical opinions relied upon by the ALJ are not substantial evidence for three reasons. First, he argues that the state agency physician Dr. Koukol "simply copied the opinions of a non physician employee regarding [Plaintiff's] limitations[.]" (JS at 6, citing AR 62-63, 34-35.) Second, he argues that Dr. Koukol is a cardiologist and therefore was "not competent to properly assess [Plaintiff's] orthopedic limitations resulting from" his scoliosis. (JS at 6.) Third, he argues that the ALJ "failed to properly consider that all of the treating medical evidence in this case consistently documents that Plaintiff's musculoskeletal impairments have gradually worsened over the past few years leading up to the ALJ's decision." (Id. at 7.)

### 1. Legal Standard.

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Turner v. Comm'r of SSA, 613 F.3d 1217, 1222 (9th Cir. 2010) (citation omitted). This rule, however, is not absolute. "Where . . . a nontreating source's opinion contradicts that of the treating physician but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician, the opinion of the treating physician may be rejected only if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence in the record." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (emphasis added and citation omitted). See also Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("If the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on

14

substantial evidence in the record.") (citation omitted). "The opinions of non-treating or non-examining physicians may … serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

### 2. Analysis.

The ALJ gave "great weight to the opinion of the State agency medical consultant" who "concluded that the claimant is capable of performing work at the light exertional range with a limitation to occasional performance of postural activities." AR 93 (citing Exhibits 10A, 11A, and 12A). The ALJ gave three reasons for doing so: (1) State agency medical consultants are "highly qualified physicians … who are experts in Social Security disability programs," citing Social Security Ruling 96-6p; (2) the opinion was "consistent … with the longitudinal treatment records showing relatively benign objective findings"; and (3) "there was no inconsistent medical source statement and no statement by a treating physician that the claimant cannot work." AR 93.

The Court finds no error in the ALJ's decision to give great weight to the opinion of the non-examining physician. This opinion constitutes substantial evidence to support the RFC determination because the opinion is consistent with the independent clinical findings of Plaintiff's treating sources, none of whom opined that Plaintiff was unable to work. See Thomas, 278 F.3d at 957.

Plaintiff's treating orthopedic physician recommended physical therapy and pain management, treatment that the physician characterized as "conservative." AR 399. Over a year later, a PA who had previously examined Plaintiff observed that essentially nothing about his condition had changed. AR 406.[4] Several treating

---

[4] Although a PA was not an "acceptable medical source" when the ALJ decided Plaintiff's case in July 2015, PA Ross's opinion was an "other source" that the ALJ was permitted to consider regarding the severity of Plaintiff's impairments and how they affected Plaintiff's ability to work. See 20 C.F.R. § 404.913(d)(1) (2015). For claims filed on or after March 27, 2017, SSA regulations now consider

15

physicians did observe a decreased range of motion in Plaintiff's spine. See AR 412 (May 2013 note of "decreased thoracic spine movements"), AR 422 (October 2013 note of "decreased range of motion with back flexion, extension, and lateral flexion"), AR 431 (August 2014 note of "decreased range of motion with back flexion and lateral flexion"). These observations, however, are consistent with the RFC's limitations on postural activities. See AR 90 (limiting Plaintiff to only occasional climbing, balancing, stooping, kneeling, crouching, and crawling). Although Plaintiff is correct that the treating records "document[] a worsening of Plaintiff's musculoskeletal impairments and limitations over the years" (JS at 7), the records do not demonstrate that those musculoskeletal impairments warrant a more limited RFC than the one determined by the ALJ.

**D.    Issue Three: Whether the ALJ Properly Considered Plaintiff's Subjective Complaints and Properly Assessed His Credibility.**

**1.    Legal Standard.**

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted).

If the ALJ finds testimony as to the severity of a claimant's pain and impairments is unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). In doing so, the ALJ may consider testimony from physicians

---

a licensed PA to be an acceptable medical source "for impairments within his or her licensed scope of practice." 20 C.F.R. § 404.902(a)(8) (2017).

"concerning the nature, severity, and effect of the symptoms of which [the claimant] complains." Id. at 959. If the ALJ's credibility finding is supported by substantial evidence in the record, courts may not engage in second-guessing. Id.

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036. If so, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen, 80 F.3d at 1283-84 & n.8. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

**2. Analysis.**

The ALJ gave several reasons for finding Plaintiff's allegations "less than fully credible." AR 93. First, the ALJ found that Plaintiff had "not generally received the type of medical treatment one would expect for a totally disabled

17

individual," i.e., that the treatment he received was "routine and conservative" rather than "aggressive." AR 93. Second, the ALJ found that Plaintiff's activities of daily living were inconsistent with a totally disabled individual. AR 93-94. Third, the ALJ found that Plaintiff "failed to follow treatment recommendations," in particular those of his pain management provider. AR 94.

These reasons are supported by substantial evidence in the record and are, when considered together, clear and convincing. Regarding the first reason, Plaintiff's orthopedist specifically characterized the recommended treatment as conservative, and a PA in the same office noted over a year later that nothing had changed. AR 399, 406.

Regarding the second reason, an ALJ may properly consider the claimant's reported daily activities in assessing the claimant's subjective complaints of pain. See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). Plaintiff argues that his "minimal activities of daily living are in no way inconsistent with his statements of records and testimony," in particular because his symptoms are "variable from day to day." (JS at 17.) However, Plaintiff testified that he could walk the dog once a week, wash dishes, prepare his own meals, shower, do his own laundry, grocery shop, and clean the bathroom. AR 16-17, 20-21. Even on bad days, he testified, he would still be able to take a shower and "sit down at the computer for awhile." AR 22. He also testified he was able to drive himself to visit relatives who lived up to an hour and a half away, and he was able to use the computer for two hours at a time. AR 18, 22-23. The ALJ was justified in finding these activities inconsistent with a claim of total disability.

Regarding the third reason, Plaintiff argues that "[t]here is no affirmative evidence of … non compliance with treatment as suggested by" the ALJ. (JS at 17.) However, in August 2014, Plaintiff admitted to a nurse practitioner at his pain management clinic that he had repeatedly failed to take his pain medication as directed, taking significantly less than the amount recommended by his treating

18

doctors.[5] See AR 431-32. In assessing a claimant's credibility, an ALJ may consider "unexplained or inadequately explained failure … to follow a prescribed course of treatment." Tommasetti, 533 F.3d at 1039; see also Orn, 495 F.3d at 638 ("[I]f a claimant complains about disabling pain but … fails to follow prescribed treatment for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated."). Here, Plaintiff told his treating doctors that he was reluctant to take opioid medications because he had a family history of addiction. See AR 455 (noting Plaintiff expressed "some concerns in that he has a family history of addiction"), AR 432 (noting Plaintiff failed to take medication as recommended because he "would rather not take any medication" due to a "family history of drug addiction"). While this provides some explanation for his failure to comply with treatment recommendations, the ALJ drew a different and equally supported inference: that this failure was "an indication that his symptoms are not as severe as he purports." AR 94. See Boswell v. Colvin, No. 14-9405, 2016 WL 806203, at *7 (C.D. Cal. Mar. 1, 2016) (rejecting plaintiff's argument that, because she took more opioid pain medications than recommended, this "overindulgence" lent credence to her complaints of pain; finding that the ALJ drew "a very different and equally supported inference," i.e., that this failure to follow treatment recommendations meant her symptoms were not as serious as she alleged). "[W]hen the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." Molina, 674 F.3d at 1111. That is the case here.

---

[5] It also appears that Plaintiff may not have fully complied with the recommendation to seek physical therapy and engage in a home exercise program. He completed a brief course of physical therapy in 2012, see AR 403, 422, but it appears he never returned to physical therapy after his orthopedist recommended it again in 2013, see AR 406.

## V.
## CONCLUSION

Based on the foregoing, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED: December 28, 2017

_____
KAREN E. SCOTT
United States Magistrate Judge